IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PATRICIA L. D.,[1]

    Plaintiff,

vs.    Civil No. 18-cv-1712-DGW[2]

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

# **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for DIB in August 2014, alleging a disability onset date of May 1, 2013. After holding an evidentiary hearing, an ALJ denied the application on June 14, 2017. (Tr. 20-30). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 3). Plaintiff exhausted her administrative remedies and filed a timely complaint with this Court.

## **Issues Raised by Plaintiff**

Plaintiff argues that the ALJ's assessment of her RFC was not supported by

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 17, 25.

1

substantial evidence in the following ways:

1. The ALJ did not include any limitations that would reasonably account for her irritable bowel syndrome (IBS) and incorrectly stated that objective tests related to IBS were all normal.

2. The ALJ failed to mention plaintiff's diagnosis of selective IgA deficiency, caused by the Epstein-Barr virus, and to account for its effects.[3]

3. The ALJ incorrectly gave too little weight to the opinion of treating physician Dr. Chartier.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the

---

[3] Selective IgA deficiency is an immune system condition in which you lack or don't have enough immunoglobulin A (IgA), a protein that fights infection (antibody). Most people with selective IgA deficiency don't have recurrent infections. However, some people who have IgA deficiency experience pneumonia, ear infections, sinus infections, allergies, asthma and diarrhea. https://www.mayoclinic.org/diseases-conditions/selective-iga-deficiency/symptoms-causes/syc-20362236, visited on June 12, 2019.

plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 2019 WL 1428885, at *3 (S. Ct. Apr. 1, 2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a

3

rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB through September 30, 2018. The ALJ found that plaintiff had severe impairments of degenerative disc disease, osteoarthritis, migraine headaches/trigeminal neuralgia, and irritable bowel syndrome (IBS)/constipation, which did not meet or equal a listed impairment.[4]

The ALJ found that plaintiff had the residual functional capacity (RFC) to do work at the light exertional level, with nonexertional physical limitations consisting of (1) no climbing of ladders, ropes, or scaffolds; (2) only occasional climbing of ramps and stairs; (3) occasional balancing, stooping, kneeling, crouching, and crawling; and (4) no exposure to temperature extremes, loud noises, or hazards such as unprotected heights.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do her past relevant work as a receptionist and a production assembler.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

---

[4] "Trigeminal neuralgia is a chronic pain condition that affects the trigeminal nerve, which carries sensation from your face to your brain." https://www.mayoclinic.org/diseases-conditions/ trigeminal-neuralgia /symptoms-causes/syc-20353344, visited on June 10, 2019.

4

formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1952 and was 64 years old on the date of the ALJ's decision. (Tr. 175). She had past employment as a factory worker and as a secretary, among other jobs. (Tr. 212). She said she was disabled because of a herniated disc, bone degeneration, depression, anxiety, migraine headaches, IBS, high blood pressure, allergies, and hearing loss. She was 5'2" tall and weighed 140 pounds. (Tr. 190).

In a function report, plaintiff said that she could not work because of chronic back pain, migraine headaches, hearing loss, and degenerative disc disease. She said that IBS caused diarrhea, cramping and constipation on some days. She did some laundry and light household chores. She cooked some quick meals. Her hobbies were reading, crocheting, and watching TV, but headaches sometimes interfered with those activities. (Tr. 203-210).

In July 2015, plaintiff reported that she had back pain and constant head pain. IBS was a "constant challenge." Her immune system was weak, and she got tired easily. (Tr. 238).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in March 2017. (Tr. 38).

Plaintiff lived with her husband. (Tr. 41). The ALJ asked her how her physical problems affected her ability to work. She said that IBS caused pain and

she never knew when she would need to use the bathroom. She took medication for constipation, a stool softener, a laxative, and an anti-nausea medication. She had not seen any improvement in her IBS symptoms since May 2013. She had chronic headaches and migraines and had been diagnosed with trigeminal neuralgia in 2014. Her medication pretty well took care of her migraines, but she still had headaches. She had a herniated disc in her back. She took pain medication and a muscle relaxer. She had been diagnosed with Epstein-Barr virus. (Tr. 46-50).

Plaintiff was diagnosed with an immune deficiency related to Epstein Barr virus. She got sick more easily that other people. For instance, it would take her longer to get over the flu. She took vitamins, folic acid, and calcium. She said it helped. The pain management doctor diagnosed the problem and treated it. She was not referred to a specialist. (Tr. 59-60).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the RFC assessment. The VE testified that this person could do plaintiff's past work as a receptionist (secretary) and a production assembler (factory worker). If she were to be absent from work on average three days a month, she would be unemployable. (Tr. 62-64).

3.  **Relevant Medical Records**

Plaintiff saw Dr. Walter, a gastrointestinal specialist, for IBS. A colonoscopy in June 2013 showed a tortuous, redundant colon with no mucosal abnormality. Although they were unable to reach the cecum, the doctor stated, "I do not believe there was very much more colon to see." A virtual colonoscopy done on the same

6

day was normal. (Tr. 295-296).

In July 2013, plaintiff complained to Dr. Walter of occasional left lower quadrant pain, constipation, and bloating. He diagnosed slow transit constipation and LLQ pain. He prescribed Lactulose (a laxative) and Bentyl (an IBS medication). (Tr. 754-758).

Plaintiff went to the emergency room in August 2013 for left lower quadrant pain. She had chronic constipation and abdominal issues for some time. She was given a "thorough work-up and nothing has been found." The doctor thought she might be having colonic spasms and increased her dosage of Bentyl. (Tr. 347-348).

Plaintiff saw her primary care physician, Dr. Rohrer, in January 2014. She denied nausea, diarrhea, constipation, or change in bowel habits. (Tr. 344). She reported in July 2014 that she was having regular bowel movements since stopping Prozac. (Tr. 341).

Dr. Rohrer referred plaintiff to Willow Creek Pain Center. She began seeing Dr. Chartier there in December 2014 for mid-back pain. He noted that she described bug bites, some with rings around them, that made her very sick. He recommended that she be tested for a tick-born illness. (Tr. 364-367).

Dr. Vittal Chapa performed a consultative physical exam in December 2014. Plaintiff had no muscle spasms and lumbar flexion was normal. Physical exam was "essentially unremarkable." Sensory exam was within normal limits. (Tr. 372-374).

In February 2015, Dr. Chartier diagnosed selective IgA deficiency and active

Epstein-Barr virus. He prescribed Acyclovir, an anti-viral drug, and vitamin C. In April 2015, plaintiff said her immune system was "low." The doctor noted "marked improvement in overall symptoms with high dose vit[amin] C – will add probiotics today." (Tr. 376-380).

Plaintiff saw Dr. Matick, a neurologist, in May 2015. She told him that her migraines were improved since her dosage of Neurontin was increased. She said that the pain specialist put her on probiotics, "which resolved her stomach problems." (Tr. 384).

In December 2015, Dr. Chartier noted "Chronic sore throat-with sinus congestion as well-has low active epstein barr-gar[g]le argentyn for sore throat and spray ninus [sic] twice a dya [sic]." (Tr. 832). The same note was repeated, including the typos and irregular spelling, in August, October, and December 2016. (Tr. 835, 838, 841).

Dr. Ringenberg took over as plaintiff's primary care physician in December 2015. Plaintiff denied abdominal pain, constipation, diarrhea, and nausea. (Tr. 689-692). In March 2016, he noted that Linzess (used to treat IBS and chronic constipation) caused abdominal pain and bloating. She stopped taking it "and symptoms have resolved." (Tr. 662). She complained of diarrhea and abdominal cramping in April 2016. She had abdominal distension and increased bowel sounds on exam. The assessment was mucous in stools. The doctor ordered some lab work. There is no indication that the lab work revealed any abnormal results. She was seen for a viral upper respiratory tract infection and acute bronchitis due to rhinovirus in May and June 2016. She complained of diarrhea.

8

(Tr. 664-669).

In June 2016, plaintiff complained to Dr. Ringenberg of IBS symptoms. She felt bloated after eating and felt her digestion was "sluggish." He prescribed Levsin. She was to schedule a recheck with Dr. Walter for her GI issues. (Tr. 670-672).

In July 2016, Dr. Matick noted that plaintiff's medications controlled her headaches. He did not need to see plaintiff until next spring since she was "doing so well." (Tr. 653).

In September 2016, plaintiff saw Dr. Walter. She said that Movantik caused her to become constipated. She stopped taking it and stated taking Miralax, which gave her relief, but she still felt pressure and bloating throughout her abdomen. On exam, her abdomen was soft with normal bowel sounds. He recommended that she take Miralax as well as Movantik and add Dulcolax if constipation persisted. (Tr. 805-810). About three weeks later, she was having bowel movements every four days. Her abdomen was again soft with normal bowel sounds. Dr. Walter ordered a Sitz marker test. (Tr. 799-803). The test showed severe constipation. (Tr. 732-733).

Plaintiff underwent a physical capacity exam in October 2016. The conclusion was that she was able to perform at least sedentary and "very likely up to" light exertional level work. (Tr. 636-637).

In October 2016, plaintiff told Dr. Walter that her constipation was better with Movantik and she was having one bowel movement a day. His impression was opioid induced constipation, improved with Movantik. (Tr. 793-798).

In December 2016, plaintiff told Dr. Ringenberg that she was "happy with pain control at present." Physical exam was normal. Her abdomen was nontender, nondistended and bowel sounds were normal. (Tr. 681).

In January 2017, Dr. Walter diagnosed constipation due to opioid use. (Tr. 787-792). In February 2017, Dr. Walter noted that a defotography study showed a small rectocele and cystocele. Plaintiff was having one bowel movement a day and denied bloating or blood in stools. He recommended over-the-counter Prilosec and Movantik. She was to return if needed. (Tr. 775-780).

### 4. Dr. Chartier's Opinion

Dr. Chartier authored a two-paragraph narrative statement on April 29, 2016. He stated that plaintiff suffered from Epstein-Barr virus, bone degeneration, herniated disc, and chronic pain, and she was unable to do her past work as a general laborer. He said that plaintiff would be off task for at least 20% of the workday and would miss work a minimum of three days a month due to her conditions, and that her limitations began on May 1, 2013. (Tr. 404).

## Analysis

Plaintiff's first point relates to her IBS. She argues that the ALJ did not include any limitations that would reasonably account for her irritable bowel syndrome (IBS) and incorrectly stated that objective tests related to IBS were all normal.

The ALJ assessed "postural limitations on climbing, balancing, stooping, kneeling, crouching, and crawling" to accommodate plaintiff's IBS symptoms. (Tr. 26). Plaintiff calls these restrictions "nonsensical" and questions how postural

10

limitations could "relate to stomach and bowel problems that cause abdominal cramping, diarrhea, and constipation?" Doc. 20, p.8. However, it is obvious that those postural limitations were intended to accommodate the periodic discomfort caused by IBS symptoms.

Plaintiff argues that the ALJ ignored much of the evidence related to her IBS and incorrectly characterized the findings of objective studies as normal. The short answer is, the ALJ adequately discussed the relevant medical evidence at Tr. 26. While he did not mention every entry in the records referring to IBS, he was not required to. In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Ibid.* (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)). Plaintiff here does not identify any significant medical evidence that is contrary to the ALJ's findings.

Plaintiff points to the June 2013 colonoscopy that was incomplete because of a tortuous colon. However, she ignores the virtual colonoscopy done the same day that showed normal findings. And, she points to no medical evidence that her tortuous colon had any effect other than interfering with visualization of the entire colon on standard colonoscopy. Similarly, she points to a CT scan two months later that showed a large amount of feces consistent with severe constipation. However, while the ALJ acknowledged that she suffered from episodic constipation,

11

he pointed to other entries in the records where she denied nausea, abdominal pain, diarrhea, constipation, or change in bowel habits. Plaintiff herself admits that she has "periods of relative stability and periods of flare-ups." Doc. 20, p. 9. Further, plaintiff ignores the ALJ's conclusion that her IBS symptoms are controlled with medication. This conclusion is consistent with Dr. Walter's 2017 records. (Tr. 775-780). Plaintiff's argument ignores much of the medical records and relies instead on her own claims about the effects of her IBS. However, the ALJ concluded that plaintiff's claims were not supported by the overall evidence, and plaintiff has not challenged that credibility determination.

Plaintiff's second point regarding her IgA deficiency requires little discussion.

The ALJ determined that Epstein-Barr virus was not a severe impairment at step 2. The failure to designate an impairment as "severe" is not, standing alone, an error requiring remand. At step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments. This is only a "threshold issue," and, if the ALJ finds at least one severe impairment, he must continue on with the analysis. And, at Step 4, he must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010).

Of course, regardless of the designation of impairments as severe, the ALJ is required to consider the combined effects of all impairments in determining

12

plaintiff's RFC.  "When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim."  *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018).

Plaintiff argues that a "common problem in selective IgA deficiency is susceptibility to infections. . . ."  Doc. 20, p. 10.  However, she points to no medical evidence that her IgA deficiency caused infections that would disable her from working.  The only suggestion in the medical records is Dr. Chartier's note linking her Epstein-Barr with a chronic sore throat and sinus congestion.  He recommended that she gargle with an over-the-counter product, and there is no evidence that this condition would cause her to miss work.  Further, in April 2015, Dr. Chartier noted "marked improvement in overall symptoms with high dose vit[amin] C – will add probiotics today."  (Tr. 376-380).

Lastly, plaintiff challenges the ALJ's weighing of Dr. Chartier's opinion.

Dr. Chartier treated plaintiff, but the ALJ was not required to fully credit his opinion because of that status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability."  *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted).  A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record.  *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Plaintiff's application was filed before March 27, 2017.  The applicable

regulation, 20 C.F.R. § 404.1527(c)(2), provides, in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques [,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

Here, the ALJ explained in detail why he gave "little weight" to Dr. Chartier's opinion, noting the ways in which it was unsupported by or conflicted with the medical evidence. He noted that the medical records indicate that plaintiff's IBS, back pain, and migraine symptoms are well-managed with conservative treatment. He pointed out that the record contains no objective evidence supporting significant limitations arising from IBS. In addition, the orthopedic specialist said she showed a positive response to physical therapy and Dr. Matick said she was doing well on her migraine medications. He concluded that this evidence contradicted

Dr. Chartier's opinion that she would be off-task for 20% of the day and would miss work three days a month. (Tr. 28).

Plaintiff's argument ignores much of the ALJ's explanation. Rather, she complains that the ALJ did not mention Dr. Chartier's diagnosis of Epstein-Barr virus in his analysis. Doc. 20, 11-12. However, she makes no compelling argument that Dr. Chartier's mention of Epstein-Barr virus entitled his opinion to more consideration, and any such argument would be undercut by the fact that Dr. Chartier's records identified only one effect of the virus, chronic sore throat and sinus congestion. Further, he noted "marked improvement in overall symptoms with high dose vit[amin] C – will add probiotics today." (Tr. 376-380).

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Court finds that the ALJ easily met the minimal articulation standard here.

This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence. Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion.

Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler*

*v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   June 13, 2019.**

**DONALD G. WILKERSON
U.S. MAGISTRATE JUDGE**